# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:14-CV-62-GCM

| GILBERT HOLLAND, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| COMPASS GROUP, USA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

THIS MATTER is before the Court upon Defendant Compass Group, USA, Inc.'s ("Compass") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 9). In its Motion, Compass asks the Court to dismiss Plaintiff's Second Amended Complaint pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction and also pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Motion is **GRANTED.**

## I. BACKGROUND

Plaintiff Gilbert Holland brought this action after being terminated from employment with Defendant Compass on September 2, 2013. (Doc. No. 7 at 6). He originally filed this action in District Court in Mecklenburg County on December 9, 2013 using a form complaint and listing claims for "discrimination" and "wrongful termination" against Compass and Carolinas Medical Center ("CMC"). (*See* Doc. No. 1-2). Judging from the docket and Defendant's filings, it appears that the Original Complaint was served on Compass but not on CMC. (*See* Doc. No. 9-1 at 2). On April 10, 2014, Plaintiff filed an Amended Complaint (Doc. No. 5), and then on June 10, 2014, Plaintiff filed a Second Amended Complaint (Doc. No. 7), which the court subsequently granted him

leave to file. (*See* Doc. No. 13). Taken as a whole, the Second Amended Complaint (hereinafter "Complaint") tells a series of events that detail Plaintiff's difficulties with his managers, coworkers, Compass's HR department, and finally with CMC itself. (*See* Doc. No. 7). Construed liberally, the Complaint appears to assert Title VII claims for discriminatory discharge on the basis of race, failure to promote on the basis of race, hostile work environment on the basis of race, and retaliation. (*See id.*) It also appears to assert a claim for wrongful termination in violation of public policy. (*See id.*)

In the Complaint, Plaintiff describes two instances of his supervisors making unwelcome, allegedly racially-motivated comments. (*See* Doc. 7 at 2, 4–5). An individual referred to only as "West" allegedly engaged in a pattern of harassing conduct "every morning" for three months by repeating one word, "crack," when he walked by Plaintiff. (*See id.* at 2). Another individual referred to only as "Aaron" allegedly made one comment to West within Plaintiff's earshot, saying "Man you're not going to believe what they won't [sic] for the company picnic, you're not going to believe it! Chicken!" (*See id.* at 4). In addition, Plaintiff alleges he filed a claim with Compass' human resources department regarding a verbal altercation between himself and another employee, Nancy, and his subsequent write up for equal fault in the incident. (*Id.* at 3). The altercation began after Plaintiff apparently came to work before his shift officially started, and Nancy asked him to leave. (*Id.*). At the end of the altercation, Nancy stated the following: "He doesn't know me, all these knife [sic] in this kitchen, I'll cut his balls off and put them in his mouth." (*Id.*). Compass found that both employees were equally at fault in the incident and issued a write up to Plaintiff. (*Id.*). Plaintiff felt the write up was "cruel and unjustified" and he filed his complaint with human resources five days later. (*Id.*).

Though it is not discussed in his Complaint, on or about September 6, 2013, it appears that Plaintiff filed a Charge of Discrimination against Compass with the Equal Employment Opportunity Commission. His charge explains that he was hired by Compass in March 2009 and discharged on

September 2, 2013 after a dispute with a coworker and making subsequent written complaints regarding the incident. (Doc. No. 1-1 at 6). While he was not given a reason for his termination, Holland's charge notes his belief that he was discharged due to his race. (*Id.*) CMC was dismissed from this case on September 9, 2014. (*See* Doc. No. 14). Compass filed the instant Motion to Dismiss Plaintiff's Complaint on October 14, 2014. (*See* Doc. No. 17).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a case should be dismissed in the absence of subject matter jurisdiction, and "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Before a plaintiff has standing to file a suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *see also* 42 U.S.C. § 2000e-5(f)(1). The scope of the federal lawsuit is limited by the contents of the EEOC charge. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Notably, when a plaintiff fails to exhaust his administrative remedies concerning a Title VII claim, the federal court is deprived of subject matter jurisdiction over the claim. *Id.* Claims that fall outside the scope of the EEOC charge are procedurally barred. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

The scope of a civil suit arising from an EEOC charge is "confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir.1981). *See also Bryant*, 288 F.3d at 132. A claim will typically be barred "if the administrative charge alleges one type of discrimination–such as discriminatory failure to promote–and the claim encompasses another type–such as discrimination in pay and benefits." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). The EEOC charge and the complaint "must, at minimum,

describe the same conduct and implicate the same individuals." *Chacko*, 429 F.3d at 510 (holding that plaintiff did not exhaust administrative remedies because "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.").

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

Finally, a complaint filed *pro se* "must be held to less stringent standards than formal pleadings drafted by lawyers," and "is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a *pro se* litigant must still plead "more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The rules of generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Godfrey v. Long*, No. 5:10-CT-3105-BO, 2012 WL 43593, at *1 (E.D.N.C. Jan. 9, 2012) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

describe the same conduct and implicate the same individuals." *Chacko*, 429 F.3d at 510 (holding that plaintiff did not exhaust administrative remedies because "his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.").

When faced with a Rule 12(b)(6) motion to dismiss, courts are instructed to "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). After "assum[ing] the veracity" of these factual allegations, the court is to "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

Finally, a complaint filed *pro se* "must be held to less stringent standards than formal pleadings drafted by lawyers," and "is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a *pro se* litigant must still plead "more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The rules of generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Godfrey v. Long*, No. 5:10-CT-3105-BO, 2012 WL 43593, at *1 (E.D.N.C. Jan. 9, 2012) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III. DISCUSSION

### A. Title VII Claims

#### 1. Hostile Work Environment on the Basis of Race

The Complaint can be liberally construed to assert a claim for hostile work environment on the basis of race based on the two separate set of facts described *supra*. Compass argues that the Court does not have subject matter jurisdiction over of Plaintiff's claim of harassment leading to a hostile work environment on the basis of race because that claim was not asserted in his EEOC Charge. (Doc. No. 17 at 7). Plaintiff's EEOC Charge reads, "I believe I have been subjected to retaliation and discriminated against because of my race. . ." and describes a verbal altercation he engaged in with another employee that led to both employees' termination by a supervisor named Mark. (*See* Doc. No. 1–1 at 6). Compass further argues that Plaintiff fails to allege facts sufficient to state a claim of hostile work environment. (Doc. No. 17 at 9).

The Court agrees that Plaintiff cannot maintain a claim for hostile work environment on the basis of race with respect to statements made by his supervisors West and Aaron because he failed to exhaust his administrative remedies in this regard. The EEOC Charge contains no mention of Aaron or West, or the two comments described in the Complaint. (*See* Doc. No. 1–1 at 6). In order for a claim to be within the scope of an EEOC charge, the EEOC charge and the complaint must, at minimum, refer to the same individuals and describe the same conduct. *See Chacko*, 429 F.3d at 510. The comments made by Aaron and West are not described at all in the EEOC Charge, nor are any of the events surrounding them. Plaintiff bears the burden of proving the existence of subject matter jurisdiction regarding these claims. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). To the extent he means to assert a claim for

hostile work environment based on these incidents, the Court finds that he has failed to establish that he exhausted his administrative remedies.

To the extent Plaintiff means to assert a claim for hostile work environment as to the events surrounding his altercation with Nancy—events which *were* referenced in his EEOC Charge—the Court finds that he fails to allege facts sufficient to state such a claim. "Title VII renders it an unlawful employment practice for an employer . . . to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-2(a)(1)). "An employer contravenes § 2000e-2(a)(1) by, *inter alia*, requiring an African American employee to work in a racially hostile work environment." *Id.* Here, the comment by Plaintiff's co-worker Nancy as alleged in the Complaint makes no reference to Plaintiff's race and does not appear to have been motivated in any way by racial animus. In fact, it appears from the Complaint that the dispute was actually related to Plaintiff arriving at his workplace before his shift began. Furthermore, from the facts alleged, Nancy's comment cannot be imputed to Plaintiff's employer Compass as she is his co-worker and Plaintiff alleges no facts to indicate his employer was negligent in controlling working conditions. *See id.* at 278 (holding that "[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions) (internal quotation marks omitted). Because it appears from the Complaint that this incident did not implicate Plaintiff's race or any other protected status, Plaintiff has failed to allege facts that support a claim for hostile work environment on the basis of race. Therefore, to the extent Plaintiff means to assert a claim for hostile work environment as to his altercation with Nancy, the claim must be dismissed pursuant to FRCP 12(b)(6).

## 2. Failure to Promote

Similarly, Plaintiff cannot maintain a claim for failure to promote on the basis of race because he failed to exhaust his administrative remedies with regard to the claim. The Complaint describes a series of facts that, liberally construed, attempt to state a claim for failure to promote on the basis of race. (*See* Doc. 7 at 2). According to the Complaint, Plaintiff applied for a position as a "Patient Service Supervisor" and was interviewed twice, then informed by a manager that he would not be given the position because the manager "needed someone who could work the units right away." (*See id.*) The manager informed the Plaintiff he would give him paperwork to help him "get ready" for the next opportunity. (*See id.*) Plaintiff was never given the paperwork, and a verbal altercation occurred when he mentioned the paperwork to the supervisor named Aaron and a Director, Jim Buzzby. (*See id.* at 3). The EEOC Charge contains no mention of Aaron, Jim Buzzby, the job interviews and subsequent rejection, or the verbal altercation relating to the missing paperwork. (*See* Doc. No. 1–1 at 6). In order for a claim to be within the scope of an EEOC charge, the EEOC charge and the complaint must, at minimum, refer to the same individuals and describe the same conduct. *See Chacko*, 429 F.3d at 510. As a result, this claim is not within the scope of the EEOC Charge. (*See* Doc. No. 1–1 at 6). Plaintiff bears the burden of proving the existence of subject matter jurisdiction regarding these claims. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). Because Plaintiff has failed to establish that he exhausted his administrative remedies against Compass with regard to the failure to promote claim, the Court finds that Plaintiff has not met this burden. As such, Plaintiff's Title VII claim for failure to promote must be dismissed for lack of subject matter jurisdiction.

### 3. Discriminatory Discharge on the Basis of Race

Compass argues that Plaintiff also fails to state facts sufficient to support a claim of discriminatory discharge. (*See* Doc. No. 17 at 10). Indeed, Plaintiff alleges no facts that demonstrate he was discharged due to his race. If anything, and as noted previously, it appears that he was terminated over an altercation with his co-worker.[1] In presenting the events surrounding his termination, Plaintiff's Complaint describes how he made repeated complaints to his employer following the incident with Nancy, which culminated in him complaining directly to CMC, who was not his employer. Plaintiff was subsequently terminated, purportedly at the behest of CMC. (*See* Doc. No. 7 at 6). At no time is Plaintiff's race mentioned in this series of events except to note that Nancy is a white female and Plaintiff is "a 53 year old black man from the south" who believed Nancy's words to be "a vulgar, racist threat." (Doc. No. 7 at 3). But again, nothing in the Complaint supports Plaintiff's bald assertion that he was threatened because of his race, much less terminated for it. Therefore, Plaintiff has not alleged sufficient facts upon which a claim for discriminatory discharge on the basis of race can be based, and it must be dismissed pursuant to FRCP 12(b)(6) for failure to state a claim.

### 4. Retaliation

Compass moves to dismiss Plaintiff's claim of retaliation on the grounds that he has not alleged that he engaged in a protected activity, nor that any of the adverse actions taken against him were causally connected to a protected activity. (Doc. No. 17 at 10). Again, Title VII renders it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of

---

[1] The Court also notes that, according to the Complaint, Nancy was also discharged for the same incident as Plaintiff. (*See* Doc. 7 at 6).

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). With regard to retaliation claims, Title VII proscribes discrimination against an employee because he "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Notably, employees engage in protected oppositional activity when they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003). *See also Boyer-Liberto v. Fontainebleau Corp*. 2015 WL 2116849, at *9 (4th Cir. May 7, 2015).

For the reasons previously stated, Plaintiff does not allege sufficient facts to support a claim that that he had a reasonable belief that a racially hostile environment was occurring and therefore engaged in a protected act by internally opposing the altercation with his fellow employee. While the incident with Nancy could fairly be characterized as threatening, these facts do not sufficiently demonstrate that the altercation was a result of racial animus, nor do they demonstrate that it could be fairly characterized as such by Plaintiff. Thus, it is not reasonable for Plaintiff to believe he was opposing a violation of Title VII with his subsequent complaints about this incident. As a result, the incident does not implicate Title VII, and Plaintiff's subsequent complaint to Compass' human resources department does not fall under the category of protected activity. Therefore, Plaintiff has not alleged sufficient facts to support a claim for retaliation under Title VII and the claim must be dismissed pursuant to FRCP 12(b)(6).

**B.  Wrongful Termination in Violation of North Carolina's Public Policy Claim**

Compass argues that Plaintiff's claim for wrongful termination must be dismissed because his Complaint does not plead sufficient facts to state such a claim. North Carolina's recognition of wrongful termination claims is narrow, but North Carolina courts do recognize such claims where an employee's termination "offends public policy." See *Kurtzman v. Applied*

*Analytical Indus., Inc.*, 347 N.C. 329, 332 (1997). One such policy is expressed in N.C.G.S. § 143-422, which recognizes the right of all persons "to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap." N.C.G.S. § 143-422.2. Notably, public policy claims based on N.C.G.S. § 143-422 are confined solely to termination. See *Moore v. Time Warner Cable, Inc.*, 2009 WL 3754225 (W.D.N.C. 2009). "North Carolina courts 'look to federal decisions [in employment discrimination cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.'" *Matthews v. Novant Health, Inc.*, 2010 WL 2131559, at *7 (W.D.N.C. Apr. 29, 2010) (report and recommendation adopted) (quoting *N.C. Dept. of Correction v. Gibson*, 308 N.C. 131, 136 (1983)).

Plaintiff cannot maintain his claim for wrongful termination for the same reasons he cannot maintain his Title VII claim of discriminatory discharge on the basis of race. Plaintiff did not allege facts that support a claim for discriminatory discharge on the basis of race. Because North Carolina courts look to the federal principles when determining whether a claim for wrongful termination exists, Plaintiff has not sufficiently alleged facts to support his claim. As a result, it must be dismissed pursuant to FRCP 12(b)(6).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Compass Group's Motion to Dismiss (Doc. No. 17) is **GRANTED**. Plaintiff's Second Amended Complaint (Doc. No. 7) is **DISMISSED**. The Clerk of Court is directed to send a copy of this order to the Plaintiff and close this case.

**SO ORDERED.**

Signed: July 9, 2015

*[Signature]*

Graham C. Mullen
United States District Judge